JOURNAL ENTRY AND OPINION
Appellant Sheila Babus appeals from the judgment of the Juvenile Court which terminated her parental rights and granted permanent custody of her five minor children[1] to appellee the Cuyahoga County Department of Children and Family Services (CCDCFS). Appellant maintains that the judgment is against the manifest weight of the evidence and/or should be reversed due to ineffective assistance of counsel because counsel did not file motions requesting legal custody of the children on behalf of third parties who were not their clients. For the reasons that follow, we affirm the judgment.
The facts, as derived from the record, provide as follows: The five minor Babus children were removed from appellant's custody on December 31, 1998 due to appellant's failure to follow through with drug treatment and due to inadequate housing. On July 30, 1999, CCDCFS filed a motion for permanent custody.
The children were removed from appellant's care prior to their removal on December 31, 1998. In 1994, appellant pled guilty to child endangerment. Appellant has had a substance abuse problem for over twelve years. Appellant has undergone various drug treatment programs throughout the county and refused treatment on one occasion. Appellant tested positive for illegal drugs as recently as March 2001.
Appellant's social worker testified that appellant's case plan required her to undergo drug treatment, establish stable housing and for the children's fathers to establish paternity.
Only Brittany's father, Andrew Shields, established paternity. He, however, was incarcerated for aggravated robbery prior to Brittany's birth and since September 27, 1988. He is not eligible for parole until August 1, 2003.
Although appellant participated in a drug treatment program, she continued to use both cocaine and marijuana. Her substance abuse went undetected as a result of a scheme between appellant and her counselor. Appellant allegedly agreed to provide her counselor with the social security numbers of two of her children so that he could claim them as his dependents on his tax returns. Appellant knew this was a felony. In exchange, the counselor would suppress any urine results that tested positive for illegal drugs.
Because appellant's participation in drug treatment appeared successful, her social worker made attempts towards reunifying her with her five children. To complete the case plan, the social worker recommended appellant for Section 8 housing, which appellant obtained on or about May 2000. A condition of the housing requires appellant to remain drug-free and drug use would violate the program.
At some point after appellant obtained housing, she voluntarily informed CCDCFS of the scheme with her drug counselor. Subsequently, her social worker learned that appellant tested positive for illegal drugs every time she was tested during the course of the drug treatment program, eleven times. In addition, the record indicates that the social worker had administered three random drug tests to appellant which all indicated illegal drug use. At the May 25, 2001 hearing, appellant admitted that she had tested positive for illegal drugs as recently as March, 2001.
Appellant's social worker stated that she would not have attempted reunification if she had known the truth about appellant's continued substance abuse. The Section 8 housing liaison testified that the appellant's positive drug tests constituted a violation of the housing program. If the information was forwarded to Section 8, she would face termination of her housing rights.
In October 2000, appellant's son, Courtney Babus, filed a Motion to Intervene in this matter and sought custody of his five siblings. Mr. Babus is twenty-one-years old. Besides babysitting his siblings for a few hours at a time, Mr. Babus has no experience with caring for children. The five children range in age between three and thirteen years old. Mr. Babus works approximately forty-five hours a week for $18,000 a year. He is single and, if awarded custody, would have to find a babysitter to tend to the children while he works nights from 4:00 p.m. to midnight.
Although Mr. Babus has visited the children with appellant on approximately three occasions, he has never called them at their foster homes. The social worker testified she felt it would be a bit overwhelming for him and she was not comfortable with him taking custody of all five children. The investigation of Mr. Babus as a potential candidate for custody was not completed and he admitted that the phone number that he provided to CCDCFS had been disconnected and failed to provide CCDCFS with another number.
Although Mr. Shields initially proposed his former wife as a potential candidate for custody, she is not a relative of any of the children. There is no evidence that this woman has any contact or interest in assuming custody of the children. During her testimony, appellant indicated that she suggested her sister-in-law as a potential custodian for the children. Again, there is no other evidence outside appellant's vague statement that would indicate that CCDCFS was informed of this person as a potential candidate. Nor is there any evidence from appellant's sister-in-law that would indicate a willingness or interest to assume custody of the children.
All five children are in pre-adoptive placement and are doing well. The guardian ad litem urged that it was in the best interest of the children to grant permanent custody to CCDCFS. After hearing the evidence, the trial court found by clear and convincing evidence that CCDCFS' motion for permanent custody was well taken. The court found that the parents failed to continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the home. Upon the recommendation of the guardian ad litem, the court found by clear and convincing evidence that the children herein cannot now or in the near future be reunited with the parents and awarded permanent custody to CCDCFS in the best interest of the children.
Appellant appeals from that judgment raising two assignments of error for our review. Assignment of Error I states:
 I. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY SINCE (1) NONE OF THE CIRCUMSTANCES SET FORTH IN R.C. 2151.414(E) WERE PROVEN BY CLEAR AND CONVINCING EVIDENCE AND (2) THE JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In the first assignment of error, appellant contends that the judgment is against the manifest weight of the evidence because, she alleges, none of the provisions of R.C. 2151.414(E) were proved by clear and convincing evidence.
This court recently articulated the standard of review employed by an appellate court reviewing a decision granting permanent custody to a child services agency as follows:
 While App.R. 12 grants an appellate court the power to reverse trial court judgments and enter those judgments that the court should have rendered, it is inappropriate in most cases for a court of appeals to independently weigh evidence and grant a change of custody.
 Miller v. Miller (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties [*15] concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding (i.e., observing their demeanor, gestures and voice inflections and using these observations in weighing the credibility of the proffered testimony) cannot be conveyed to a reviewing court by a printed record. Id., citing Trickey v. Trickey (1952), 158 Ohio St. 9, 13, 106 N.E.2d 772.
 In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. See Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. Accordingly, the trial court's determination in a custody proceeding is only subject to reversal upon a showing of an abuse of discretion. Dailey v. Dailey (1945), 146 Ohio St. 93, 64 N.E.2d 246; Trickey, supra.
 Hence, this reviewing court will not overturn a permanent custody order unless the trial court has acted in a manner that is arbitrary, unreasonable or capricious. See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
In re Benevides (May 3, 2001), Cuyahoga App. No. 78204, unreported.
R.C. 2151.414(E) requires the court to enter a finding that the children cannot, or should not, be placed with either parent where the clear and convincing evidence establishes one or more of the factors enumerated in R.C. 2151.414(E)(1)-(12). R.C. 2151.414(E)(1) provides in pertinent part as follows:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.
The trial court found by clear and convincing evidence that despite the diligent efforts of the CCDCFS, the parents had failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the home. The court also found that the children cannot now or in the near future be reunited with the parents and that it was in the best interest of the children to award permanent custody to CCDCFS. These findings are supported by both competent and credible evidence in the record.
For example, appellant lost custody of her children on more than one occasion since 1994, largely connected to her drug abuse problem. She has had a substance abuse problem for over twelve years. She has undergone three different drug treatment programs and refused treatment on one occasion. After her children were removed from her care in 1998, she continued to use cocaine and marijuana. Appellant admits to facilitating tax fraud in exchange for the ability to continue abusing drugs undetected during the course of her latest drug treatment program. Due to this deception and the revelation of her continued substance abuse, appellant has violated the conditions of her current housing.
Appellant tested positive for illegal drugs eleven times during the course of her treatment program. Every time her social worker tested appellant, the results revealed the use of illegal drugs. Appellant admits that she tested positive for illegal drugs as recently as March 2001, just two months before the trial. There is no evidence in the record that would corroborate appellant's claim that she is now drug-free. The children have been in the custody of CCDCFS for over two and one half years.
The guardian ad litem represented that the children are all receiving wonderful care from their foster parents who are willing to commit to adoption. The guardian ad litem maintained and the court agreed that the clear and convincing evidence established that it was in the best interest of the children to award permanent custody to CCDCFS in accordance with the applicable provisions of R.C. 2151.414.
After a thorough review of the record, we cannot conclude that the trial court abused its discretion in awarding permanent custody to CCDCFS. The judgment is supported by competent and credible evidence and this assignment of error is overruled.
 II. THE PROCEEDINGS BELOW WERE DEFECTIVE AND IN VIOLATION OF MS. BABUS'S DUE PROCESS RIGHTS BECAUSE SHE FAILED TO RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL.
In the next assignment of error, appellant contends that her attorney and/or Mr. Shield's attorney should have filed motions on behalf of Courtney Babus, Lori Babus, and Mr. Shield's ex-wife requesting that the court grant these individuals legal custody of the five children. Appellant argues that counsel's failure to do so constituted ineffective assistance of counsel. There is no evidence to corroborate appellant's claim that Lori Babus had any interest in assuming custody of the children. And, while Mr. Shields originally suggested his ex-wife as a candidate for custody, he no longer maintained this position at the time of trial.[2]
Appellee counters that this assignment lacks merit since Mr. Babus filed a motion to intervene in this action on his own behalf and because the strategies and actions of counsel in this matter do not satisfy the criteria for a finding of ineffective assistance of counsel. See Strickland v. Washington (1984), 446 U.S. 668.
R.C. 2151.353(A)(3) permits the trial court to consider placing a child in the legal custody of persons who file motions requesting legal custody of a child prior to the dispositional hearing. In this case, none of the identified individuals filed motions for legal custody. More importantly, neither counsel for appellant nor counsel for Mr. Shields represented any of the identified individuals. We cannot find ineffective assistance of counsel on the basis that an attorney did not file a motion that may very well be adverse to the interests of his or her own client. If these individuals were interested in pursuing legal custody, as alleged by appellant, then they had the opportunity to file motions on their own behalf as required by the statute. This assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas Juvenile Court Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, P.J., and COLLEEN CONWAY COONEY, J., CONCUR.
[1] Brittany, Brandy, Christopher, Christina and Briana.
[2] At trial, Mr. Shields' testified that he desired appellant to have custody and in the alternative that custody be awarded to Courtney Babus.