JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Ca. O. ("mother"),[1] appeals the grant of permanent custody of her two children, C.O. (age 8 years) and Ch.O. (age 10 years). The children were removed from her care in October 2002, and a complaint alleging neglect and dependency was filed on October 11, 2002. The children were adjudged neglected on November 20, 2002 and committed to the temporary custody of the Cuyahoga County Department of Children and Family Services ("CCDCFS"). The children were in full custody of CCDCFS from August 5, 2001 through the final hearing on April 27, 2004, except for a two-week period in September 2002 when they were returned to their mother's care. She was unable to stay sober at that time, and her drug use led to their removal in 2002. Unfortunately, this was the fourth and final such removal for these children from their mother's care.
 {¶ 2} A Motion to Modify Temporary Custody was filed by CCDCFS on July 22, 2003. Trial on that motion was held on February 17, 2004, and additional testimony was taken from appellant on April 27, 2004. The trial court issued its journal entry granting permanent custody on May 24, 2004. The children's fathers neither contested the grant of permanent custody nor filed any appeals. Mother now appeals with three assignments of error.
 {¶ 3} "I. The trial court erred in its order to grant permanent custody to the cuyahoga county department of children and family services against the manifest weight of the evidence and in the absence of clear and convincing evidence."
 {¶ 4} "II. The trial court erred by accepting the written report of the guardian ad litem in violation of local juvenile rules and mother's right to due process."
 {¶ 5} "III. The trial court erred by failing to discuss all the factors articulated in 2151.414(D) regarding the children's best interest."
 Permanent Custody {¶ 6} R.C. 2151.353 states in pertinent part:
 {¶ 7} "(A) If a child is adjudicated an abused, neglected or dependent child, the court may make any of the following orders of disposition:
 {¶ 8} "* * *
 {¶ 9} "(4) Commit the child to the permanent custody of a public children services agency * * * if the court determines in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot or should not be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414 that the permanent commitment is in the best interest of the child."
 {¶ 10} Because the instant case was tried on a motion to modify temporary custody to permanent custody, R.C. 2151.353 did not apply; instead, the proceeding was governed by R.C. 2151.414(B), which states in pertinent part:
 {¶ 11} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 12} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 13} "(b) The child is abandoned.
 {¶ 14} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 15} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 16} "For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."
 {¶ 17} Once a court determines that one of the above conditions exist, it must then determine by clear and convincing evidence that permanent custody is in the best interest of the children by considering the factors listed in R.C. 2151.414(D) as well as any other relevant factors. It is important to note that when R.C. 2151.414(B)(1)(d) applies, the court is not required to make a determination that the child cannot or should not be returned to either parent within a reasonable time. "The court does not need to determine that the child cannot or should not be placed with either parent within a reasonable time [when] the child has been in the temporary custody of one or more public children services agencies for more than 12 of the last 22 months." In reM.H., Cuyahoga App. No. 80629 at ¶ 25, 2002-Ohio-2968; See R.C.2151.414(B); see, also, In re William S. (1996), 75 Ohio St.3d 95, 99.
 Best Interest {¶ 18} The goal of any disposition of a child is that disposition which is in the best interest of the child. In re Baby Girl Baxter
(1985), 17 Ohio St.3d 229. This must be the primary and overriding concern in any child custody case. In re Higby (1992),81 Ohio App.3d 466. A court's failure to base its decision on a consideration of the best interests of the children involved constitutes abuse of discretion. In re Adoption of Ridenour (1991), 61 Ohio St.3d 319. The Ohio Supreme Court defined "abuse of discretion" in Blakemore v.Blakemore as follows: "The term abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." (1983), 5 Ohio St.3d 217, 219, citing Steiner v. Custer (1940), 137 Ohio St. 448; Conner v. Conner,
(1959), 170 Ohio St. 85. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. In re Doe I (1990), 57 Ohio St.3d 137, citing Berkv. Matthews (1990), 53 Ohio St.3d 161.
 {¶ 19} This court visited this issue in In re Mayle (July 27, 2000), Cuyahoga App. Nos. 76739, 77165. In Mayle, the court found that the trial court's decision committing the child of a minor mother to the legal custody of the foster parent for the minor mother was an abuse of discretion because that placement would not be in the best interest of the child, but instead would only preserve the parental rights of the minor mother with no regard to the child's need for a stable, permanent home. Hence, a trial court must give priority to the best interest of the child — not the parent — in reaching a decision regarding permanent custody. Id. As stated by the court in In Re Awkal, "both the best interest determination and the determination that the child cannot be placed with either parent focus on the child, not the parent. R.C.2151.414(C) prohibits the court from considering the effect the granting of permanent custody to a children services agency would have upon the parents." Awkal, (1994), 95 Ohio App.3d 309.
 {¶ 20} Finally, completion of a case plan does not, in and of itself, require that children be reunified with parents who have failed to remedy the conditions which led to removal in the first place. This argument, if accepted, would convert the goal of the reunification process into one of mere rigid compliance with the rules of CCDCFS rather than a process in which the parent learns to exercise her own judgment in a manner which will insure the protection and well-being of the children. In ReMcCutchen (March 8, 1991), Knox App. No. 90-CA-25 at 5.
 {¶ 21} To determine whether permanent custody is in the children's best interest, the court is required to turn to R.C. 2151.414(D):
 {¶ 22} "* * * [T]he court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 23} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 24} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 25} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 26} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 27} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 28} In its journal entry, the trial court indicated that it considered all factors listed in R.C. 2151.414(D)(1)-(5), and no party moved for further findings of fact or conclusions of law. Despite appellant's assertion in her third assignment of error, the statute does not require the court to list those factors or conditions it found applicable before making its determination that the child cannot be placed with either parent or that permanent custody is in that child's best interest. In re I.M., Cuyahoga App. Nos. 82669 82695, 2003-Ohio-7069, ¶ 27. The trial court's failure to specifically discuss each of the factors set forth in R.C. 2151.414(D) when rendering its judgment is not reversible error. In re T.M., Cuyahoga App. No. 83933, 2004-Ohio-5222, ¶ 32. Appellant's third assignment of error is therefore overruled.
 Manifest Weight {¶ 29} It is well established that when some competent, credible evidence exists to support the judgment rendered by the trial court, an appellate court may not overturn that decision unless it is against the manifest weight of the evidence. Seasons Coal Co., Inc. v. Cleveland
(1984), 10 Ohio St.3d 77, 80; C.E. Morris Co. v. Foley Construction Co.
(1978), 54 Ohio St.2d 279, 280. However, the trial court's determination in a custody proceeding is only subject to reversal upon a showing of an abuse of discretion. In re Satterwhite, Cuyahoga App. No. 77071, 2001-Ohio-4137, citing Dailey v. Dailey (1945), 146 Ohio St. 93,64 N.E.2d 246; Trickey (1952), 158 Ohio St. 9, 13. This reviewing court will not overturn a permanent custody order unless the trial court has acted in a manner that is arbitrary, unreasonable or capricious. SeeBlakemore v. Blakemore, supra. "The discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In re Awkal, supra;Satterwhite, supra.
 {¶ 30} The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding (i.e., observing their demeanor, gestures and voice inflections and using these observations in weighing the credibility of the proffered testimony) cannot be conveyed to a reviewing court by a printed record. Miller v. Miller (1988),37 Ohio St.3d 71, 74, 523 N.E.2d 846, citing Trickey v. Trickey, supra. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct.Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80. As the Supreme Court of Ohio has stated, "it is for the trial court to resolve disputes of fact and weigh the testimony and credibility of the witnesses." Bechtol v. Bechtol (1990), 49 Ohio St.3d 21.
 {¶ 31} In her first assignment of error, appellant argues that the trial court erred in determining, pursuant to R.C. 2151.414(E), that she had failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the home. However, the children were placed in temporary custody on November 20, 2002 after having been removed in October 2001. The trial court found that they had, thus, been in the custody of CCDCFS for 12 or more months of a consecutive 22-month period, as required by R.C. 2151.414(B). Accordingly, appellant's argument regarding the elements of R.C.2151.414(E) is not well-taken. The trial court was not obligated to make that determination based on the children's custody status; the only consideration necessary was the best interest determination for the children.
 {¶ 32} The trial court was presented with adequate competent, credible evidence to determine that permanent custody was in the children's best interest under the relevant factors. The children had been out of the mother's custody for a total of approximately three years at the time of trial. During that time, she had been unable to stop using drugs, PCP in particular, and she had been involved in several criminal cases. In fact, immediately following the permanent custody trial, appellant was arrested on an open warrant. Although she had made attempts to comply with her case plan, including finding employment and housing, the underlying cause of her troubles, drug use, was not adequately under control. Nevertheless, the trial court gave appellant every opportunity to demonstrate her ability to provide care for the children, including holding another hearing on April 27, 2004 to hear further testimony from appellant regarding her current situation.
 {¶ 33} During the course of the proceedings, the court heard testimony from the assigned social worker, appellant's drug counselor, and appellant herself. The evidence demonstrated that appellant had a long history of serious drug abuse and had routinely engaged in crimes of dishonesty, including forgery, passing bad checks, grand theft auto and receiving stolen property. Although the children expressed love for their mother and a desire to live with her, appellant had been unable to demonstrate an ability to remain drug-free until just months prior to the permanent custody trial. Appellant had undergone inpatient drug treatment during the period of her involvement with CCDCFS and had been referred for treatment services designed to assist her in overcoming her drug addiction, to no avail. Indeed, the drug counselor admitted that she had no confirmation of appellant's compliance with 12-step meeting attendance for approximately 30 to 60 days prior to trial.
 {¶ 34} In addition, there was some testimony that appellant suffers from mental illness, for which she is prescribed medication, and that when she is noncompliant with her treatment regimen she has a "tendency to self medicate" with illegal drugs. As to her interaction with the children, evidence showed that appellant had actively encouraged the children to misbehave and disrupt their placements so that no foster family would want to keep them on a permanent basis. The social worker went on to testify that the children were not placed in homes which had expressed a desire to adopt them, but that once permanent custody was granted, an adoption worker would be assigned to, hopefully, locate such a placement. In light of the evidence presented, we cannot find that the trial court abused its discretion in determining that permanent custody was in the children's best interest. Accordingly, we find that the judgment was not against the manifest weight of the evidence, and appellant's first assignment of error is overruled.
 GAL Report {¶ 35} In her second assignment of error, appellant argues that Loc.Juv.R. 20(C)(4) compels a guardian ad litem to file his or her report at least one week prior to trial. R.C. 2151.414(C) states, however, that a "written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing * * *." Pursuant to the Hoffman case, parties in a permanent custody action are entitled to cross-examine the guardian ad litem with respect to his/her recommendation and the contents of any report submitted to the court. Inre Hoffman, 97 Ohio St.3d 92, 2002-Ohio-5368.
 {¶ 36} Appellant failed to object at trial to the manner in which the guardian ad litem's report was filed and presented to the court. This court has routinely held that, absent a timely objection in the trial court, no reversible error occurs in this situation, even when no guardian's report is ever filed. In re Nicholson (Jan. 27, 2000), Cuyahoga App. Nos. 75533-75539; In re Davis (June 14, 2001), Cuyahoga App. No. 78810; In re Cordell (1992), Cuyahoga App. Nos. 60049 and 60050;Shiflett v. Korp (Sept. 27, 1990), Cuyahoga App. No. 58293; In re MichaelA. (March 21, 2002), Cuyahoga App. No. 79835. Appellant had two opportunities — at the February 17, 2004 and April 27, 2004 hearings — to examine the guardian as to her recommendation. She failed to do so; nor did she object at trial to the timeliness of the filing of the report. Therefore, any claim of error is waived, and her second assignment of error is overruled.
 {¶ 37} A parent's right to raise his or her child is eclipsed only by the right of the child to grow up in a safe, stable, permanent home free of physical or emotional abuse or neglect. The appellant in this case, unfortunately, has not demonstrated over the years that her children have been in the custody of the state that she is willing or able to provide such an environment for them. While it is regrettable that the children may not yet be placed in potentially adoptive placements, they should not be relegated to "custodial limbo" only to allow the mother yet another chance to prepare herself to be an appropriate parent.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Calabrese, Jr., J., and Rocco, J., concur.
[1] The parties are referred to herein by their initials or title in accordance with this court's established policy regarding nondisclosure of identities in juvenile cases.